**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RONALD B. GREENE,** | **Civil Action No. 22-150 (SDW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **ROBERT CHETIRKIN et al.,** | |
| **Respondents.** | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for writ of habeas corpus under 28 U.S.C. § 2254 by Petitioner Ronald B. Greene, a New Jersey state prisoner who is challenging his 2014 convictions for conspiracy to distribute heroin, robbery, and related offenses.  (ECF No. 1). Respondents filed an answer to the petition for writ of habeas corpus.  (ECF No. 4).  Petitioner did not file a reply brief.  For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

## I.  PROCEDURAL HISTORY

On February 9, 2012, a Bergen County Grand Jury returned Indictment Number 12-02-00302-1, charging Petitioner with the following:  Count 1, second-degree conspiracy to distribute a controlled dangerous substance ("CDS"), heroin (first-degree), in violation of N.J. Stat. Ann. 2C:35-5a(1) and 5(b)(1) and N.J. Stat. Ann. 2C:5-2; Count 2, second-degree conspiracy to commit armed robbery (first-degree), in violation of N.J. Stat. Ann. 2C:5-2, N.J. Stat. Ann. 2C: 15-1; Count 3, third-degree distribution of a controlled dangerous substance, heroin, to an undercover agent, in violation of N.J. Stat. Ann. 2C:35-5a(l) and 2C:35-5b(3); Count 4, second degree conspiracy to distribute CDS, heroin (first-degree), in violation of N.J. Stat. Ann. 2C:35-5a(1) and 5b(1); Count

1

5, third-degree possession with intent to distribute imitation heroin under circumstances which would lead a reasonable person to believe the substance was CDS or CDS analog, in violation of N.J. Stat. Ann. 2C:35-11; Count 6, first-degree robbery; Counts 7 and 16, second-degree possession of a weapon for unlawful purpose, in violation of N.J. Stat. Ann. 2C:39-4a; Counts 8 and 17, second-degree possession of a handgun without the requisite permit, in violation of N.J. Stat. Ann. 2C:39-5b and 2C:58-4; Count 9, fourth-degree possession of a defaced firearm, in violation of N.J. Stat. Ann. 2C:39-3d; Counts 10 and 18, second-degree possession of a firearm during a drug offense, in violation of N.J. Stat. Ann. 2C:35-5 and 2C:39-4. l(a); Count 11, first-degree attempted murder, in violation of N.J. Stat. Ann. 2C:11-3 and 2C:5-1; Counts 12 and 15, fourth-degree resisting arrest, in violation of N.J. Stat. Ann. 2C:29-2a(2); Count 13, third-degree hindering apprehension, in violation of N.J. Stat. Ann. 2C:29-3b(l); Count 14, fourth-degree aggravated assault, in violation of N.J. Stat. Ann. 2C: 12-1b(4); Count 19, second-degree resisting arrest, in violation of N.J. Stat. Ann. 2C:29-2b; Count 20, third-degree possession CDS (cocaine), in violation of N.J. Stat. Ann. 2C:3510a(1); Counts 21, 22, 23, and 24, second-degree certain persons not to have weapons in violation of N.J. Stat. Ann. 2C:39-7b.

After a jury trial before the Honorable Edward A. Jerejian, J.S.C., held on November 7, 2013 through December 4, 2013, Petitioner was acquitted of attempted murder and resisting arrest. He was convicted on all other counts.  (ECF No. 4-22 at 18-22).  The following day, Petitioner was tried and convicted on the charge of possession of a weapon by a convicted felon.  (ECF No. 4-25 at 17).  On March 28, 2014, the trial court denied Petitioner's motion for a new trial.  (ECF No. 4-23 at 6-7).  The trial court granted the State 's motion for an extended term on the first-degree robbery count, and Petitioner was sentenced to an aggregate 35-year term of imprisonment.

(ECF No. 4-23 at 21-26).  On April 11, 2014, Petitioner was resentenced to the same prison term, with clarification of the applicability of the Graves Act.  (ECF No. 4-5 at 7).

Petitioner appealed on June 5, 2014.  (ECF No. 4-1 at 76-77).  On November 9, 2016, the Superior Court of New Jersey, Appellate Division affirmed Petitioner's conviction and sentence. (ECF No. 4-5).  On January 30, 2017, the Supreme Court of New Jersey denied Petitioner 's petition for certification.  (ECF No. 4-7 at 60).  On December 4, 2017, Petitioner filed a *pro se* petition for post-Conviction relief ("PCR") in the Superior Court of New Jersey, Law Division, Bergen County.  (ECF No. 4-7 at 61-90).  Oral argument was held on December 10, 2018, before the Honorable Robert M. Vinci, J.S.C. (ECF No. 4-24), who issued a written decision denying PCR relief on January 10, 2019.  (ECF No. 4-7 at 91-109).  On February 20, 2019, Petitioner appealed the denial of his PCR petition.  (ECF No. 4-7 at 1-30).  The Appellate Division affirmed the PCR court on April 21, 2021.  (ECF No. 4-9).

## II.  BACKGROUND

On November 9, 2016, the Superior Court of New Jersey, Appellate Division affirmed Petitioner's conviction and remanded for resentencing, summarizing the facts as follows.

> In October 2011, the Bergen County Prosecutor's Office, Narcotics Task Force (NTF), received and acted upon information that Jose B. Rodriguez was involved with heroin distribution. Detective Michael Perez of the NTF contacted Rodriguez and posed as an interested buyer. Perez and Rodriguez had numerous conversations which resulted in an agreement whereby Rodriguez would sell Perez two kilos of heroin for $100,000. A meeting was set for the transaction on October 18, 2011, at the Hampton Inn in Ridgefield Park.
>
> The NTF held a briefing on the morning of the planned transaction. Perez was equipped with a recording device and transmitter so that backup officers could monitor the conversation between Perez and Rodriguez. Perez prearranged a distress signal should he require assistance from the backup officers. At approximately 11:45 a.m., other backup officers arrived at the Hampton Inn to secure a vantage

point. Perez spoke to Rodriguez indicating he was en route. Rodriguez advised Perez that he was also en route. At this time, backup officers observed a silver Chevrolet Malibu with New Jersey license plates and a silver Toyota Camry with New York license plates enter the parking lot. The backup officers observed Rodriguez exit the Camry, walk to the hotel's front entrance, and sit on a bench. The driver of the Camry was Yohan Balcacer. The other occupants were Brandon Segar and defendant. The backup officers advised Perez that Rodriguez arrived.

Perez arrived at the location approximately twenty-five minutes later, parked his car in the center of the lot, and phoned Rodriguez to coordinate a meeting place. Rodriguez walked to Perez's car, entered using the passenger-side door, and handed Perez a sample of a tan, powdery substance. Perez suggested he leave with the sample to test the quality and then would meet with Rodriguez in an hour to pay for the heroin. Rodriguez agreed with the suggestion and exited the vehicle. Perez then drove to a pre-determined location where he met with Sergeant Anthony Martino of the NTF. A field test was conducted which confirmed the substance to be heroin. Perez advised Rodriguez by phone that he would return at 1:00 p.m. with the $100,000.

While this was occurring, the Malibu left the Hampton Inn and proceeded to an Exxon gas station. Defendant exited the Malibu and entered the station's convenience store. The Camry remained at the Hampton Inn. Rodriguez exited the Camry holding a package that he placed in bushes near the hotel. Shortly thereafter Segar and defendant returned to the Hampton Inn, parking the Malibu in the rear lot.

Perez returned to the Hampton Inn and approached Rodriguez, who was sitting on a bench near the main entrance. Rodriguez and Perez walked to the bushes where the plastic bag was located. Perez opened the bag and observed a tan, powdery substance similar to the sample. Rodriguez then inquired about the money. Perez responded that it was in his car. As Rodriguez and Perez walked toward the car, the Malibu approached from the rear of the hotel moving slowly past Perez, with both Segar and defendant staring at him. The Malibu parked next to Perez's car. Perez was approached by defendant who racked the slide on a handgun and, from two feet away, pointed it at Perez's head. Perez ran toward the rear of the hotel yelling "gun." Perez remained at that location until he was met by a backup officer.

Defendant tried to open Perez's car when members of the Bergen

4

County Sheriff's Department, Criminal Investigation Unit, converged on the scene. Defendant threw the gun under Perez's car and attempted, without success, to enter the Camry as it sped away. Defendant ran toward Route 46, ignoring police officers' commands to stop, but was eventually apprehended and handcuffed. The officers located and seized a handgun from under the driver's side of Perez's car. A second handgun, located in the center console of the Malibu, was also seized. Both handguns were operable and loaded with metal jacketed, hollow-point bullets.

The drug sample Rodriguez provided to Perez was again analyzed and determined to be .67 grams of heroin. However, when the larger quantity of suspected heroin from the bag was analyzed, it was determined not to be a controlled dangerous substance.

A Bergen County grand jury returned a twenty-four count indictment against defendant, Rodriguez, Segar and Balcacer.... Defendant filed a motion to dismiss the indictment. The motion was heard and denied.

A bifurcated jury trial involving only defendant commenced on November 7, 2013, and ended on December 4, 2013. Defendant did not testify and did not produce any witnesses. Defendant was acquitted of attempted murder and resisting arrest. He was convicted on all other charges. On December 5, 2013, defendant was tried and convicted before the same jury for the certain persons charge.

On the return date of the sentence, defendant's motion for a new trial was denied. The State's motion for an extended term on the first-degree robbery conviction was granted. The court merged counts two, seven and sixteen with count six and sentenced defendant to a twenty-five-year term of imprisonment with eighty-five percent minimum parole ineligibility subject to the No Early Release Act (NERA), and a five-year period of parole supervision. Defendant was sentenced to a consecutive ten-year term of imprisonment with a parole ineligibility period of five years for the certain persons conviction. On the remaining charges, defendant was sentenced to concurrent terms [on] the robbery conviction.

The trial court resentenced defendant on April 11, 2014, to clarify the applicability of the Graves Act to certain aspects of the sentence. Upon resentence, counts ten and eighteen were to run consecutive to the sentences imposed on counts three, four and five, but remained concurrent to the sentence imposed on count six. On count fourteen, defendant was sentenced to an eighteen-month term of imprisonment without parole. The sentence on count eight was

unchanged. In the aggregate, defendant was sentenced to a thirty-five-year term of imprisonment with twenty-one-years-and-three-months without parole. Applicable fines and fees were imposed.

(ECF No. 4-5 at 1-7).

## III.   DISCUSSION

### A.   Failure to Raise Cognizable Habeas Claims

Respondents submit that Petitioner failed to raise cognizable habeas claims in Ground 2 and Ground 4 of the petition.   In Ground 2, Petitioner alleges error in the jury instruction on robbery, and in Ground 4, he alleges that the prosecutor misled the grand jury.  (ECF No. 4 at 4). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Petitioner, however, presents a federal constitutional claim for Ground 2 in his memorandum of law, attached to his habeas petition.  In support of Ground 2, Petitioner asserts

> [h]abeas relief for a due process violation concerning an absent or defective instruction is available when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *Albrecht v. Horn*, 485 F.3d 1 3, 129 (3d Cir. 2007) (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 39, 38 L. Ed. 2d 368 (1973)).

(ECF No. 1-1 at 17-18, 20).  Therefore, this Court will address the merits of Ground 2 below.

In support of Ground 4 of the petition, Petitioner relies on the Fifth Amendment right to a legally constituted and unbiased grand jury.  (ECF No. 1-1 at 24-30).  Petitioner alleges that the prosecutor engaged in misconduct before the grand jury by suggesting there was a video showing Petitioner pointing a gun at Detective Perez's head, but the video quality was too poor to corroborate this allegation.

"The Fifth Amendment right to an indictment by a grand jury does not apply to state criminal prosecutions" *Simmons v. Ricci*, No. CIV.A. 10-0250 RMB, 2011 WL 4073589, at *21

(D.N.J. Sept. 13, 2011) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477 n. 3 (2000); *Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516 (1884)). Thus, "[b]ecause the Due Process Clause of the Fourteenth Amendment has not been construed to incorporate the Fifth Amendment right to indictment by a grand jury … the legality of an indictment is a matter of state law." *Id.* (internal quotations and citations omitted). This Court will dismiss Ground 4 of the petition because it does not present a cognizable habeas claim.

**B. Procedural Default**

Respondents contend that Petitioner procedurally defaulted the habeas claims in Ground 6 (trial counsel was ineffective for failing to object to the admission of weapons into evidence) and Ground 9 (trial counsel was ineffective for failing to make proper objections during trial), because he did not present these claims to the Appellate Division or to the New Jersey Supreme Court on direct appeal. (ECF No. 4 at 3-4). The PCR court denied these claims as procedurally barred because the ineffective assistance of counsel claims could have been raised on direct appeal. (ECF No. 4-7 at 101).[1] The PCR court further found that none of the exceptions under New Jersey Court Rule 3:22-4 were applicable. (*Id.*) The PCR court alternatively denied the claims on the merits. (*Id.*) The Appellate Division, on PCR review, affirmed the PCR court's determination that these claims were procedurally barred because they could have been raised on direct appeal. (ECF No. 4-9 at 3-4).

Procedural default of a habeas claim occurs

> [w]here a state court refuses to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine, unless the habeas petitioner can show cause for the default and prejudice attributable

---

[1] Ground six of the habeas petition was labeled "Point I" of the PCR petition. (ECF No. 4-7 at 95). Ground nine of the habeas petition was "Point 4" of the PCR petition. (ECF No. 4-7 at 96).

> thereto. Any procedural default, however, must rest on adequate and independent state law grounds.

*Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004) (internal citations and quotations omitted).

> A state procedural rule is an inadequate ground to bar federal review if it was not firmly established and regularly followed by the state courts at the time it was applied. *Bronshtein [v. Horn]*, 404 F.3d [700], 707 [(3d Cir. 2005)]. Whether a procedural rule "was firmly established and regularly applied is determined as of the date the default occurred, and not as of the date the state court relied on it, because a petitioner is entitled to notice of how to present a claim in state court." *Albrecht [v. Horn]*, 485 F.3d [103,] 115 [(3d Cir. 2007)] (internal citations omitted).

*Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 611 (3d Cir. 2011).  In 1999, the Third Circuit held that New Jersey Court Rule 3:22-4 was not an adequate state law ground to bar ineffective assistance of counsel claims that were not raised on direct appeal, stating "to the best of our knowledge, the Supreme Court of New Jersey has not applied R. 3:22-4 to bar a post-conviction relief proceeding merely because the petitioner did not raise a proffered ineffective assistance of counsel claim on direct appeal, even if he could have done so." *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999).  The default of Grounds 6 and 9 in the state courts occurred when Petitioner failed to raise the claims on direct appeal.  Direct appeal was denied in 2016.  In 2016, the New Jersey Supreme Court continued not to regularly apply Rule 3:22-4 to bar ineffective assistance of counsel claims that were not raised on direct appeal.  *See State v. Hess*, 23 A.3d 373, 385 (2011) (quoting *State v. Precise*, 129 N.J. 451, 460, 609 A.2d 1280 (1992) ("[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding"); *State v. Jones*, 98 A.3d 560, 567 (N.J. 2014) ("PCR proceedings offer the best opportunity for ineffective assistance claims to be reviewed") (citing *Precise*, 129 N.J. at 459–60)).  Therefore, Rule 3:22-4 is not an adequate state law ground to procedurally default Grounds 6 and 9 of the habeas petition, and these grounds

will be addressed on the merits below.  Because the PCR court, affirmed by the Appellate Division, alternatively addressed the merits of these claims, this Court will apply the habeas standard of review.

**C.  28 U.S.C. § 2254 Legal Standard**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  "[A] determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, dicta in Supreme Court cases "cannot supply a ground for relief." *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022).  Supreme Court holdings "that speak only at a high level of generality" are also not grounds for habeas relief. *Id.* (citations omitted).  Further, "[s]tate-court decisions are measured against [Supreme Court] precedents as of the time the state court renders its decision and cannot be held unreasonable only in light of later decided cases." *Id.* (internal quotations and citations omitted)).

"A state court decision involves an unreasonable application of clearly established federal law when no fairminded jurist could reach the state court's conclusion under Supreme Court precedents." *Brown,* 142 S. Ct. at 1525 (internal quotation and alteration omitted)). "Similarly, if a petitioner alleges the state court's decision 'was based on an unreasonable determination of the facts' under § 2254(d)(2), it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Id.* (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (internal quotation marks and alteration omitted)).

"[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.'" *Id.* at 1524 (citing 28 U.S.C. § 2243)). "[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA. But to grant relief, a court must find that the petitioner has cleared both tests" including the harmless error analysis described in *Brecht v. Abramson*, 507 U.S. 619, 638 (1993). *Id.* at 1524.

### D.  Analysis

In his petition, Petitioner raises four claims that were exhausted on direct appeal and six claims, with subparts, that were exhausted on post-conviction review.

**Ground 1:  "The prosecutor committed misconduct by improperly glorifying Detective Perez and his role as a[n] undercover officer."**  (ECF No. 1-1 at 10).

Petitioner asserts that the prosecutor's strategy of painting Detective Perez as a hero who put his life at risk made it impossible for the jury to fairly assess the detective's credibility.  (ECF No. 1-1 at 10). Petitioner alleges that the prosecutor's misconduct was so egregious as to deprive him of a fair trial, in violation of the Due Process Clause.  (*Id.*)  In support of his claim, Petitioner asserts that the prosecutor began by glorifying the Bergen County Narcotics Task Force in his opening statement.

You're also going to hear about the brave men and women of the Bergen County Narcotic [sic] Task Force. You're going to hear how they go about their daily functions as a law enforcement agency - as law enforcement officers to go and root out drug deal[s].

(ECF No. 1-1 at 11, citing ECF No. 4-16 at 41).

On direct examination of Detective Perez,

[PROSECUTOR]: Can you tell us what, if any, dangers do you face as an undercover officer?

[DEFENSE COUNSEL]: Objection. Objection, it's irrelevant. It's not - it's not relevant. It's general discussion about - it should be about this case.

[THE COURT]: I'll - I'll allow some generalities, but

[THE PROSECUTOR]: Okay.

[THE COURT]: All right?

[THE PROSECUTOR]: [to the witness]: Can you just –

[THE COURT]: Thank you.

[THE PROSECUTOR]: - answer the question?

[PEREZ]: Yes. Possessing, distributing or manufacturing controlled dangerous substances is illegal. With that, because it's very dangerous in the sense that there's money involved, people know or might know that they're involved in a crime that can result in their arrest, and it's a - it's not legal, for the most part. With that, there's a lot, like I said, usually there's a lot of money involved. With that, comes the dangers of protecting that money .

[DEFENSE COUNSEL]: Judge, I object to this. I object to the answer. This is not –

[THE COURT]: All right.

[DEFENSE COUNSEL]: It should be about this case.

[THE COURT]: Next question.

(ECF No. 1-1 at 11-12, citing ECF No. 4-17 at 32-33).

11

[THE PROSECUTOR]: And can you tell us when you were setting up the meeting place, were you advising anyone as to what your plans were for the 18th?

[PEREZ]: Yes, I'm - I work under a supervisor in Narcotic Task Force. My supervisor at that time was Sergeant Anthony Martino, and the supervisor of Anthony Martino and myself is Lieutenant Thomas Zebrowski. Before we do any operation of this magnitude, because this is a big deal, and there's an anticipated exchange of a large quantity of heroin with the exchange of a large quantity of money. In this particular case, two kilograms for $100,000. With that, there's a lot of concerns from our side for safety.

[DEFENSE COUNSEL]: Objection. This is not in response to any particular question, it's a narrative.

[THE PROSECUTOR]: I think it is.

[THE COURT]: I'll allow it, go ahead.

[PEREZ]: So, basically, as I indicated, this is a large - this is a big deal. With that, we have to make sure - I have to report to my supervisor, I indicated was Sergeant Martino, and gave him a play-by-play, for the most part, of what's going on. Any deal of this magnitude, we want to make sure, obviously, that we have enough police personnel to cover whatever situation is going to arrive at - relate to this particular deal. Safety wise, to cover myself and have enough people, obviously, to listen to my conversations with Mr. Rodriguez and anyone else that presents themselves, as well as, you know, being able to more particularly cover me, be able to watch me to be close enough that if something were to go wrong, that they can be able to respond in a fast time.

[THE PROSECUTOR]: Was there a concern for your safety?

[PEREZ]: Absolutely, absolutely. This is a large deal, we're talking about a lot of money. Jose Rodriguez, as I indicated to you earlier, he basically told me his name was Miguel, I had a nickname. We didn't know each other from a hole in the wall, for the most part. So, with that, based on my experiences in the past, as well as this particular investigation, he doesn't know me, I don't know him, very dangerous situation because he's believing that I'm coming to him, we're going to be meeting and I'm going to have $100,000 on me. Being that he does not know me, that obviously presents an opportunity for him to do –

> [DEFENSE COUNSEL]: Objection.

> [THE COURT]: All right. Next question.

(ECF No. 1-1 at 12-13, citing ECF No. 4-17 at 49-51).

> Then, in his closing statement, the prosecutor argued:

>> They had over a dozen people in different areas round the Hampton Inn at that particular time. And it was important for them to be there, to be surveillance, to be part of the arrest team, and to be the life preserve, the life preserver for Detective Perez, because his life was on the line. When he goes out and does a drug deal, he puts his life on the line. There's no ifs/ands about it. It's a dangerous, dangerous profession that he does.

(*Id.* at 14, citing ECF No. 4-21 at 46).

>> He [Perez] testified right in front of you, you have to judge his credibility, you heard it from the stand right there, he took the stand and looked you in the eye and told you that it was something that is hard to contemplate, that the guy took a gun at him, pointed it directly at him. Everybody has a right after work to go home safe and sound. But he's one of the people, he's one of the people that puts his life on the line to perform his duty as a sworn police officer. He's the one who goes into the area of danger, just to do his job. Was there a gun or was there not a gun?

(*Id.*, citing ECF No. 4-21 at 59-60).  The prosecutor closed with "[a]nd that's what Detective Michael Perez does for a living. Thank you." (*Id.*)

Respondents oppose relief on this claim.  (ECF No. 4 at 7-15).  They maintain it was proper for Detective Perez to testify about the dangers he faced as an undercover officer for the Narcotics Task Force, as these were the circumstances upon which Petitioner was arrested and charged.  (*Id.* at 14). The prosecutor's summation responded to defense counsel's attack on Detective Perez's credibility, where the defense argued that Detective Perez lied to the grand jury, and that none of the incidents he testified to actually occurred.  (*Id.*)  The prosecutor instructed the jury that it would have to decide whether Detective Perez was a liar.  (*Id.* at 10, citing ECF No. 4-21 at 43).

Respondents conclude that the Appellate Division's decision was not contrary to or an unreasonable application of Supreme Court precedent, particularly in light of the jury instruction that the arguments of counsel are not evidence and could not be considered in reaching a verdict. (ECF No. 4 at 14-15, citing ECF No. 4-21 at 67-68).

Habeas review is of the "'last state-court adjudication on the merits of 'the petitioner's claim.'" *Brown*, 142 S. Ct. at 1528 (quoting *Greene v. Fisher*, 565 U.S. 34, 40 (2010)). This claim was denied by the Appellate Division on direct appeal, and the New Jersey Supreme Court denied certification without comment. Therefore, habeas review is of the Appellate Division's decision, as follows.

> [A] [p]rosecutor['s] primary role in society is to seek justice, however, they are also expected to prosecute crimes. State v. Marshall I, 123 N.J. 52 (1991). The prosecutor is allowed to aggressively sum up the State's case, and may discuss facts shown or reasonably inferred by the evidence. State v. R.B., 183 N.J. 308, 330 (2005). A prosecutor is generally limited to commenting on the evidence and to "drawing any reasonable inferences supported by the proof..." State v. Zola, 112 N.J. 384, 425 (1988), cert denied, 489 U.S. 1022, 109 S. Ct. 1146, 103 L. Ed. 2d 205 (1989). This does not prevent a prosecutor from making "a vigorous and forceful presentation of the State's case." Ibid. (quoting State v. Bucanis, 26 N.J. 45, 56, cert. denied, 357 U.S. 910, 78 S. Ct. 1157 2 L. Ed. 2d 1160 (1948)). A prosecutor is given "considerable leeway in closing arguments as long as the comments are reasonably related to the scope of the evidence presented." State v. R.B., 183 N.J. 308, 332 (2005). To reverse a conviction based on prosecutorial misconduct, the conduct must be so egregious that it deprived a defendant the right to a fair trial. State v. Wakefield, 190 N.J. 397, 457 (2007). Additionally, the error must have led the jury to a result it otherwise might not have reached. State v. Taffaro, 195 N.J. 442, 454 (2008).
>
> Applying these legal principles, we conclude that in the application of these legal principles that the State's conduct during the opening statement, the elicitation of Perez's testimony about the dangers of being an undercover officer, and the summation did not constitute prosecutorial misconduct. The prosecutor's opening referring to members of the NTP as "brave" was arguably a form of bolstering but not to the point of misconduct. We hold a similar position on

14

> defendant's misconduct argument regarding the testimony of Perez. Even in the absence of this testimony, we find the dangers associated with being an undercover officer would be evident to a reasonable and fair-minded juror. Concerning the prosecutor's summation, defendant's counsel argued during his summation that Perez lied during his testimony regarding the gun being pointed at his head. It was fair comment for the prosecutor to argue in rebuttal that Perez was telling the truth and was a credible witness. The prosecutor did not vouch for Perez's veracity, but called upon the jury to engage in that task by assessing his testimony.

(ECF No. 4-5 at 10-12).

The Supreme Court has held that, to entitle a petitioner to habeas relief based on violation of the Due Process Clause, a prosecutor's conduct must be so egregious as to render the entire proceedings fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974). Thus, a federal court's review of a prosecutor's conduct is limited to determining whether it so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Greer v. Miller*, 483 U.S. 756, 765 (1987). It is not enough that a prosecutor's actions were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The offending conduct must be reviewed in context, and in light of the entire trial, assessing the severity of the conduct, the effect of any curative instructions, and the strength of the evidence against petitioner. *Darden*, 477 U.S. at 182.

The Appellate Division reasoned that the prosecutor's comments on the dangers of undercover narcotics investigations was not fundamentally unfair because the danger was evident to a fairminded juror. This was a reasonable conclusion, for exactly the reasons described by Detective Perez in his testimony, undercover narcotics operations involve an illegal activity, a lot of money, and the potential for arrest. If the prosecutor had not used words such as dangerous, brave, and life preserver, all of those things were likely to arise in the jurors' minds as the testimony in this case unfolded. This alone is reason to conclude that the prosecutor's conduct was not so

egregious as to infect the entire trial with unfairness. What is more, the trial court instructed the jury that counsel's arguments are not evidence; the jury must only consider the evidence, as defined by the court; and the jury must not be swayed by passion, prejudice or sympathy.  (ECF No. 4-21 at 66-68).  *See*, *Darden*, 477 U.S. at 182 (finding no prosecutorial misconduct where, among other things, "[t]he trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence.")  Here, the prosecutor's conduct falls far short of that required for habeas relief; that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).  Therefore, this Court will deny Ground 1 of the petition.

**Ground 2:  "Because it did not include a definition of attempted theft, the jury instruction on robbery was fatally defective."**  (ECF No. 1-1 at 17).

Petitioner submits that the robbery charge was based on an unusual set of facts that could only constitute attempted theft, and attempted theft was not defined in the jury instructions.  (ECF No. 1-1 at 17).  Testimony at trial suggested that two parties met to consummate a drug deal.  When the undercover detective ostensibly went to get the money from his car, Petitioner allegedly ambushed him by pointing a gun at him, without voicing any demands.  Detective Perez ran away. There was conflicting testimony about whether Petitioner attempted to open Detective Perez's car, but there was nothing to be stolen because Detective Perez had not brought purchase money to the scene.  (*Id.*, citing ECF No. 4-20 at 16-17; ECF No. 4-19 at 136).  In the jury instructions, the trial court provided the standard definition of theft.  (ECF No. 1-1 at 20, citing ECF No. 4-21 at 77-78). The trial court did not provide explanation of what proofs were required to demonstrate attempted theft.  (ECF No. 1-1 at 18-19).  Most importantly, the trial court did not specify that conduct cannot

16

be deemed a substantial step toward robbery unless it is "strongly corroborative of the actor's criminal purpose." (*Id.* at 19, citing *State v. DeHart*, 430 N.J. Super. 108 (App. Div. 2013)). If the jury had been properly instructed, they might have concluded that the act of pointing the gun was too ambiguous to be "strongly corroborative" of intent to commit a robbery. (*Id.*) Petitioner asserts that the jury charges on attempted murder and attempted aggravated assault were insufficient to instruct the jury on the attempted robbery charge, in violation of his right to due process. (*Id.* at 20).

Respondents oppose relief and submit that the jury instructions on "attempt" in the first degree attempted murder and aggravated assault charges were sufficient to instruct the jury on "attempt to commit a theft," an element of first-degree robbery. (ECF No. 4 at 16-17, citing ECF No. 4-21 at 21-22, 77-81). Thus, Respondents argue that the defective jury charge did not fatally infect the trial with unfairness, and the Appellate Division properly affirmed the robbery conviction. (ECF No. 1-1 at 17).

Habeas review of the highest state court's reasoned decision is of the Appellate Division's denial of this claim on direct appeal. The Appellate Division explained,

> [w]hen an appellant raises error on a jury charge, the charge must be read as a whole; not just the portion alleged as error. State v. Wilbely, 63 N.J. 420, 422 (1973). All that is necessary is that the entire charge be accurate. State v. Thompson, 59 N.J. 396, 411 (1971). A jury instruction should explain the law to the jury in the context of the material facts of the case. State v. Koskovich, 168 N.J. 448, 506 (2001). Because defendant failed to object to the charge, a showing of plain error must be made when the defendant claims error on appeal. R. 1:7-2; R. 2:10-2. In considering a jury charge, plain error is "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969) (citation omitted), cert. denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L. Ed. 2d 797 (1970). However, errors impacting directly on the court's obligation "to

assure the jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions … are poor candidates for rehabilitation under the harmless error philosophy." <u>State v. Simon</u>, 79 <u>N.J.</u> 191, 206 (1979). If an instruction for a charge does not include an instruction on attempt, there is no error if there is an instruction on attempt elsewhere in the charge. <u>State v. Smith</u>, 322 <u>N.J.</u> Super. 385, 399-400 (App. Div.) <u>certif. denied</u>, 162 <u>N.J.</u> 489 (1999). Defendant urges the court plainly erred because it charged the jury on first-degree robbery without including an instruction on attempted theft. During the charge, the court provided instruction on attempt relative to the attempted murder charge and the lesser-included offense of attempted aggravated assault. Given this instruction, albeit on other charges, the charge taken as a whole was not erroneous to the extent that it brought about an unjust result. <u>Ibid.</u>

(ECF No. 5 at 14-16).

The only question for a habeas court on review of whether a jury instruction violated the defendant's right to due process is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (additional citations omitted).  "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 72 (quoting *Cupp,* 414 U.S., at 147).  In general, it must be established that the jury instruction violated "some constitutional right."  *Id.* (quoting *Donnelly*, 416 U.S. at 643).

Petitioner was charged in the Indictment with robbery, in violation of N.J. Stat. Ann. 2C:15-1 in the first degree:

> in the course of committing a theft, did threaten immediate bodily injury to Detective Michael Perez and/or did purposely put Detective Michael Perez in fear of immediate bodily injury, while armed with and/or threatening the immediate use of a deadly weapon; contrary to the provisions of N.J.S.A. 2C:15-1, and against the peace of this State, the Government and dignity of the same.

(ECF No. 4-1 at 48).

       Criminal attempt, under New Jersey law, is defined as:

> a. Definition of attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
>> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>>
>> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
>>
>> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
>
> b. Conduct which may be held substantial step under subsection a. (3). Conduct shall not be held to constitute a substantial step under subsection a. (3) of this section unless it is strongly corroborative of the actor's criminal purpose.

N.J. Stat. Ann. § 2C:5-1.

       The trial court instructed the jury:

> In order for you to find the defendant guilty of robbery, the State is required to prove each of the following elements beyond a reasonable doubt. That the defendant was in the course of committing a theft; that while in the course of committing a theft, the defendant threatened another with or purposely put in fear of immediate bodily injury. As I've said the State must prove beyond a reasonable doubt that the defendant was in the course of committing a theft. In this connection, **you are advised that an act is considered to be in the course of committing a theft if it occurs in an attempt to commit a theft**, during the commission of a theft, itself, or immediate flight after the attempt or commission. Theft is defined as the unlawful taking or exercise of unlawful control over property of another with the purpose to deprive him thereof. **I had**

> **previously defined purposely on page 11 under attempted murder**, with purpose designated or the -- or equivalent terms having the same meaning. In addition to proving beyond a reasonable doubt that the defendant was in the course of committing a theft, the State must also prove beyond a reasonable doubt that while in the course of committing that theft defendant threatened Detective Michael Perez with or purposely put him in fear of immediate bodily injury. The phrase bodily injury means physical pain, illness or any impairment of physical condition. Although no bodily injury need have resulted, the prosecution must prove that defendant either threatened the victim with or purposely put him in fear of such bodily injury.

(ECF No. 4-21 at 84-87) (emphasis added).

Thus, the jury was instructed that first-degree robbery occurs in the course of committing attempted theft or immediate flight after an attempted theft, as the evidence suggested here. Although the trial court did not define attempt within the first-degree robbery charge, the court referred the jury to the attempted murder charge to find the definition of "purposely." This informed the jury that it could find definitions for other terms in other parts of the instructions. The trial court defined attempt within its attempted murder instruction:

> In order for you to find the defendant guilty of attempted murder, the State must prove beyond a reasonable doubt that it was defendant's **purpose** to cause the death of the victim. More specifically the law provides that a person is guilty of an attempt to commit a crime of murder if the person **purposely did or omitted to do anything which under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct to plan to accommodate** and is causing the death of the victim. Thus in order to find the defendant guilty of the crime of attempted murder, the State must prove the following elements beyond a reasonable doubt. First it was defendant's purpose to cause the death of Michael Perez.
>
> Secondly, the defendant **purposely did or omitted to do anything which under the circumstances as a reasonable person believed them to be, is an act or omission constituting a substantial step in the course of conduct planned to culminate and is causing** the death of the victim. First the State must prove that the defendant acted purposely. **Purposely means** it was the person's conscious

object to cause the death of the victim. Whether the defendant's purpose was to cause the death of the victim is a question of fact for you to decide.

Purpose is a condition of the mind. It is not necessary for the State to produce a witness who can testify the defendant stated, for example, that his purpose was to cause the death of the victim. It is within your power to find that proof for purpose has been furnished beyond a reasonable doubt by inference which may arise from the nature of the acts and surrounding circumstances.

. . .

Secondly, **the State must also prove beyond a reasonable doubt that the defendant purposely did or omitted to do which under the circumstances as a reasonable person would believe them to be is an act or omission constituting a substantial step in the course of conduct planned to culminate in** its causing the death of the victim. **However, the step taken must be one which is strongly corroborative of defendant's criminal purpose. The defendant must be shown to have had a firmness criminal purpose to** cause the death of the victim. **Preparatory steps, if any, must be substantial** and not just remote preparatory acts.

(ECF No. 4-21 at 74-78) (emphasis added).

The jury was properly instructed on the definition of "attempt," and could have applied this definition to determine whether Petitioner, by pointing a gun at Detective Perez's head while he was presumed to be retrieving $100,000 from his car to purchase two kilos of heroin, attempted to commit theft by "the unlawful taking or exercise of unlawful control over property of another with the purpose to deprive him thereof."   The Appellate Division reasonably applied clearly established federal law in concluding that the jury instruction on first degree robbery, when considered in light of the instructions as a whole, did not fatally infect the entire trial with unfairness.  Therefore, this Court will deny Ground 2 of the habeas petition.

**Ground 3:  "The Trial Court erred in refusing to dismiss the second-degree charge of conspiracy to distribute a first-degree amount of heroin at the close of the State's case"** (ECF No. 1-1 at 21).

Petitioner asserts the trial court erred by denying the defense's motion for judgment of acquittal on Count 4 of the Indictment, second-degree conspiracy to distribute a first-degree amount of heroin, under New Jersey Court Rule 3:18-1.  (ECF No. 1-1 at 21).  He contends there was no evidence that any of the defendants intended to sell more than five ounces of genuine heroin to Detective Perez.  (*Id.*)  Detective Perez was given a .67 gram heroin sample.  (*Id.*, citing ECF No. 4-26 at 4, 13).  The substance Rodriguez brought to the Hampton Inn was not heroin or a controlled dangerous substance.  (ECF No. 4-26 at 13-14).

New Jersey Court Rule 3:18-1 provides:

> At the end of the State's case, or after the evidence of the defense has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction. R. 3:18-1.

(ECF No. 1-1 at 22; N.J.R.CR.R. 3:18-1).  The New Jersey Supreme Court stated, "[t]he due process requirements of both our Federal and State Constitutions -- as well as Rule 3:18-2[2] -- mandate that our courts vacate a conviction based on evidence from which "no rational trier of fact could find guilt beyond a reasonable doubt[.]")  *See, State v. Lodzinski*, 265 A.3d 36, 60 (2021) (quoting *Jackson* [*v. Virginia*], 443 U.S. [307,] 317 (1979).  Therefore, this Court construes Petitioner's habeas claim as a federal due process challenge to the sufficiency of the evidence.

Petitioner describes the evidence as set forth herein.  (ECF No. 1-1 at 22-23).  Detective Perez was negotiating a drug purchase from someone he knew as Jose Rodriguez, who offered to sell him two kilos of heroin.  Over the course of two weeks, Rodriguez talked to Perez over the phone about his efforts to obtain that amount of heroin from his supplier.  Eventually Rodriguez

---

[2] New Jersey Court Rule 3:18-2 governs motions for acquittal made after discharge of the jury; whereas Rule 3:18-1 governs motions for acquittal made before submission to a jury.

told Perez that he had acquired the two kilos and would meet him for the sale.  When they met, however, Rodriguez brought only a small sample of heroin and two kilos of flour.  Thus, whether Petitioner, who was Rodriguez's co-defendant and alleged co-conspirator, intended to sell Perez two kilos of heroin "is so attenuated that a jury could not have found Petitioner guilty beyond a reasonable doubt."  (*Id.* at 24).

Respondents oppose relief on Ground 3.  (ECF No. 4 at 17-19).  At trial, the defense argued the evidence showed that the conspirators, including Petitioner, always intended to provide fake drugs to Perez.  (*Id.* at 18, ECF No. 4-20 at 103-04).  The State countered that the initial agreement was to distribute heroin, and defendants distributed fake heroin because they could not obtain the drugs from their supplier.  (*Id.*, ECF No. 4-20 at 105).  In denying the motion for acquittal, the trial court found sufficient circumstantial evidence to show that the conspiracy was to distribute real heroin, which later turned into a plan to provide fake heroin.  (*Id.*, ECF No. 4-20 at 113-16).  The Appellate Division agreed, and held that it was of no consequence that the substance was not heroin, because the agreement was to sell Detective Perez a first-degree amount of heroin.  (*Id.* at 18-19, ECF No. 4-5 at 16-17).

Under clearly established Supreme Court precedent, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)).

For habeas review, the highest reasoned state court's decision on Ground 3 was by the Appellate Division on direct appeal.

> Defendant further argues that the trial court erred in refusing to dismiss the second-degree conspiracy charge to distribute a first-degree amount of heroin. At the conclusion of the State's case, defendant moved for a judgment of acquittal of that charge. Defendant claimed that the State failed to present sufficient evidence showing that a conspiracy existed to distribute heroin. Defendant argued the evidence demonstrated that he, along with Rodriguez, Segar, and Balcacer, intended to distribute imitation drugs to Perez. In opposition, the State argued that the conspiracy charge was strongly supported in that Perez negotiated with Rodriguez for weeks prior to the transaction to purchase two kilos of heroin. While, in fact, an imitation drug was distributed to Perez, the "agreement" was to distribute heroin. The court, in adopting the State's argument, denied the motion. A judgment of acquittal may be granted if, giving the State the benefit of all favorable inferences which could be drawn from the evidence, a reasonable jury could not find the defendant guilty of the charge beyond a reasonable doubt. *State v. Kittrell*, 145 N.J. 112, 130 (1996). The motion must be granted if the State failed to offer evidence on any element of the offense. *State v. Samuels*, 189 N.J. 236, 245 (2007).

> Conspiracy requires an agreement between one or more persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt or solicitation to commit the crime. N.J.S.A. 2C:5-2. The agreement itself is the crime. *Samuels*, *supra*, 189 N.J. at 245. There must be evidence of a firm intent to commit the crime provided by the agreement, and it may be proven by circumstantial evidence. Ibid. The inquiry is one of "common-sense." Id. at 246. Here, there was ample evidence whereby a reasonable jury could find defendant guilty of conspiracy to distribute heroin. Perez testified that Rodriguez assured him that he could secure two kilos of heroin. Defendant's role in the conspiracy was to accompany Rodriguez to the Hampton Inn in furtherance of the transaction. It is of no consequence that the distributed substance was not heroin as the agreement which formed the predicate for the conspiracy was for the sale of a first-degree quantity of heroin. As such, the court properly denied the motion to dismiss the second-degree conspiracy charge.

Clearly established Supreme Court precedent instructs that in criminal conspiracy, "the criminal agreement itself is the actus reus[.]" *United States v. Shabani*, 513 U.S. 10, 16 (1994)

(citations omitted); *Smith v. United States*, 568 U.S. 106, 110 (2013); *see also*, *United States v. Hirsch*, 100 U.S. 33, 34 (1879) ("The essence of conspiracy is 'the combination of minds in an unlawful purpose.'")  Circumstantial evidence alone may be sufficient to support a conspiracy. *Blumenthal v. United States*, 332 U.S. 539, 557 (1947) ("the law rightly gives room for allowing the conviction of those [conspiracies] discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others.")

Key to the Appellate Division's denial of this claim is that Petitioner's role in the conspiracy was to accompany Rodriguez to the Hampton Inn to sell two kilos of heroin.  Sufficient evidence was submitted to the jury that Petitioner accompanied Rodriguez to the Hampton Inn, initially arriving together in the same car, where Rodriguez had arranged to sell two kilos of heroin to Detective Perez.  Once Detective Perez had tested and approved the heroin sample, he set up a second meeting with Rodriguez for later that day at the Hampton Inn to exchange $100,000 for two kilos of heroin.  Rodriguez showed Detective Perez the two kilos of fake heroin and asked for payment.  Just as Rodriguez was about to collect the money, or so he thought, from Detective Perez, Petitioner drove his car from the rear of the parking lot and parked the car next to Detective Perez's car.  Petitioner exited his car and pointed a gun at Detective Perez's head.  A reasonable jury could infer, based on the earlier conversation between Rodriguez and Detective Perez, that Rodriguez and Petitioner believed Detective Perez had $100,000 in his car, which he brought with him to purchase the heroin.  The evidence that Petitioner pointed a gun at Detective Perez's head permitted the jury to reasonably infer that Petitioner joined the agreement to sell heroin to Detective Perez, but the agreement was altered to provide fake heroin because the co-conspirators were unable to obtain two kilos in time for the arranged sale.  "A state court decision involves an

unreasonable application of clearly established federal law when no fairminded jurist could reach the state court's conclusion under Supreme Court precedents." *Brown*, 142 S. Ct. at 1525. Petitioner has not pointed to any prior decision of the Supreme Court that is inconsistent with the State Court's determination that sufficient evidence existed to convict Petitioner of conspiracy to sell two kilos of heroin. Therefore, this Court will deny Ground 3 of the habeas petition.

**GROUND 5: "Petitioner's convictions should be vacated under 28 U.S.C. § 2254(d)(1) because the evidence failed to provide all the required elements of the offense beyond a reasonable doubt."** (ECF No. 1-1 at 30).

Ground 5(a) repeats the challenge to the jury instruction on robbery that was raised in Ground 2. In Ground 5(b), Petitioner challenges the sufficiency of the evidence on the first-degree robbery charge. Petitioner presents the evidence as follows: when questioned whether he was threatened or put in fear of immediate bodily injury, Detective Perez testified that he felt somebody was going to get shot. (*Id.*, citing ECF No. 4-17 at 115). Detective Perez conceded that no one else saw Petitioner with a gun. (*Id.*, citing ECF No. 4-17 at 70-71). Because the jury acquitted Petitioner of attempted murder, aggravated assault, and resisting arrest, the jury could not have been persuaded beyond a reasonable doubt that Petitioner had a gun. (ECF No. 1-1 at 36-37, citing ECF No. 4-17 at 115). Without evidence of a gun, there was nothing to establish that Detective Perez was threatened or put in fear of bodily injury, a necessary element of the robbery statute. (*Id.*)

Respondents oppose relief, noting the Appellate Division found that the claim "lack[ed] sufficient merit to warrant discussion in a written opinion." (ECF No. 4 at 24, citing ECF No. 4-5 at 20). In opposition to the claim, Respondents rely on their brief filed in the Appellate Division, which, in turn, relied on citations to the testimony at trial concerning the guns that were found. (ECF No. 4-4 at 8; ECF No. 4-2 at 5-13).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Harrington*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In other words, habeas relief is proper only when no fairminded jurist would agree with the state court's decision. Furthermore, "'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted)). Thus, when a state court has not provided reasons for finding that a claim lacks merit "[u]nder § 2254(d), a habeas court must determine "what arguments or theories . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 102.

Circumstantial evidence may be used to prove intent in a criminal case. *See, e.g.*, *Jackson*, 443 U.S. at 324–25 (1979) ("[f]rom the circumstantial evidence in the record, it is clear that the trial judge could reasonably have found beyond a reasonable doubt that the petitioner did possess the necessary intent at or before the time of the killing.") As discussed in Ground 3 above, there was sufficient evidence to permit a jury to infer that Petitioner accompanied Rodriguez to the Hampton Inn to sell two kilos of heroin to Detective Perez, an undercover officer. After showing Detective Perez the two kilos of heroin, which was actually only flour, Detective Perez was asked to produce the payment. When Detective Perez arrived at his car, ostensibly to get $100,000 for the heroin, Petitioner approached him and pointed a gun at his head. There was testimony that after Detective Perez ran away Petitioner tried to open the car door, which the jury could reasonably infer was an attempt to take $100,000 believed to be inside. Because a fairminded

jurist could agree with the state court's conclusion that the circumstantial evidence was sufficient to support the first-degree robbery conviction, habeas relief is not warranted.  Therefore, this Court will deny Ground 5(b) of the petition.

**GROUND 6:  "Trial counsel rendered ineffective assistance of counsel by not objecting to the admission into evidence of the weapons found when the State offered them into evidence."** (ECF No. 4-1 at 40).

In support of this claim, Petitioner refers to his brief in support of his PCR petition and appellate brief on PCR appeal.  In his PCR petition, he asserted that his counsel was ineffective because he failed to file a motion to suppress after the State failed to establish chain of custody of the weapons.  Further, assuming the evidence was properly admitted, Petitioner alleged that his counsel failed to address the gaps in chain of custody in his summation.  (ECF No. 4-7 at 61, 72-75).  Petitioner submits there was no receipt or evidence log for the weapons that the State claims to have found at the scene.  (*Id.* at 72).

Petitioner summarizes the testimony as follows:  (*Id.* at 72-74).  Detective Metzinger testified that he arrived at the scene hours after the incident and took photographs of the weapons that were found.  He admitted that he did not know how or when the gun was placed under the passenger side of the Chevy Malibu.  Sergeant Doyle also testified that he arrived several hours after the incident.  He observed a gun on the ground of the passenger side of the Chevy Malibu, and another gun near the center console of the Chevy Malibu.  (*Id.*)  No fingerprints were found on the weapons to connect them to Petitioner.  (*Id.* at 73).  Petitioner contends that defense counsel should have objected to the weapons being admitted into evidence.  (*Id.* at 74).  Petitioner raised the same ineffective assistance of counsel claim on appeal of the PCR court's decision.  (ECF No. 4-7 at 2.)

Respondents oppose relief on this claim because it was rejected by the state courts based on uncontroverted testimony that placed the weapons at the scene. (ECF No. 4 at 27, citing ECF No. 4-9). A police officer photographed the weapons at the scene. (*Id.*) Detective Perez identified the handgun as the one defendant pointed at his head. (*Id.*) Detective Valdivia identified the handgun as the one he saw defendant place on the ground near the car. (*Id.*) Other officers testified where the guns were found, and that the guns were collected shortly thereafter. (*Id.*)

On appeal of the PCR court's decision, the Appellate Division held that "[t]o the extent we have not specifically addressed defendant's arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2)." (ECF No. 4-8 at 8). The Appellate Division did not specifically address this claim. Thus, for habeas review, the highest reasoned state court opinion is that of the PCR court, which addressed the merits of the claim as follows.

> The Defendant's claim that trial counsel was ineffective because he failed to obtain a "receipt or evidence log of the weapons which the State maintains were found at the scene" is wholly without merit.... Defendant essentially concedes in his brief that the State introduced evidence at trial regarding the authenticity of the weapons entered into evidence and the chain of custody. In fact, the State introduced evidence in the form of photographs of the weapons at the scene and testimony of the officer who took the photographs. (Da 149-55). In addition, Det. Perez testified regarding the handgun that defendant pointed at his head and Det. Valdivia testified regarding his observation of defendant placing that handgun on the ground in the area of the parked vehicles. The weapons were collected by the officers on scene after they were photographed. Whether the requisite chain of custody has been sufficiently established to justify admission of an exhibit is a matter committed to the discretion of the trial judge, and the court's determination will not be overturned in the absence of a clearly mistaken exercise thereof. State v. Kollarik, 22 N.J. 558, 565-566 (1956). While the proper foundation for the admission of such evidence requires a showing of an uninterrupted chain of custody, "it is not necessary for the party introducing such evidence to negate every possibility of substitution or change in condition between the event and the time of trial, especially whereas here, the custodian has been an arm of the State. The question is one [of reasonable] probability that no [tampering]

has occurred," <u>State v. Brown</u>, 99 <u>N.J.</u> Super. 22, 27-28 (App. Div. 1968).

The evidence introduced was more than sufficient to establish the admissibility of the weapons, Defendant's apparent contention that the State was obligated to introduce a receipt or written evidence log finds no support in the law. There is no such requirement. Correspondingly, there [was] no obligation for defense counsel to demand what would amount to unnecessary and cumulative evidence regarding chain of custody. It follows, therefore, that a motion to suppress based on the failure to introduce this additional evidence would have been denied, if made. Defense counsel is not required to advance losing arguments and cannot be faulted for declining to do so. <u>See</u> <u>State v. Worlock</u>, 117 <u>N.J.</u> 596, 625 (1990). The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel. <u>State v. Echols,</u> 199 <u>N.J.</u> 344, 360-61 (2009).
tr
Based on a totality of the circumstances, defendant's claim that trial counsel failed to object to the admissibility of the weapons at trial based on chain of custody fails under the <u>Strickland</u> analysis. Trial counsel's performance did not fall below an objective standard of reasonableness because there was more than sufficient evidence produced at the trial to establish chain of custody and admissibility of the weapons.

(ECF No. 4-7 at 102-03).

The PCR court identified *Strickland* as the standard governing ineffective assistance of counsel claims under the Sixth Amendment. Having identified the proper standard under clearly established federal law, the issue is whether the highest reasoned state court's determination involved an unreasonable application of Supreme Court precedent.

The *Strickland* test for ineffective assistance of counsel has two parts, deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance requires "showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Counsel's performance is evaluated under an objective standard of reasonableness, under

prevailing professional norms. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome*." Id.* at 694.

The PCR court, affirmed by the Appellate Division without discussion, found that counsel's failure to object to admission of the guns found at the scene did not violate the Sixth Amendment because the evidence was more than sufficient to support admissibility. First, there is no requirement under New Jersey state law for a receipt or written evidence log to establish chain of custody. Second, a gun was found and photographed near the area where Petitioner pointed the gun at Detective Perez. The gun was found on the ground in the parking lot where Detective Valdivia saw Petitioner put it after pointing it at Detective Perez. Another gun was found in the car Petitioner parked next to Detective Perez's car. These guns were photographed and collected by officers, representing an arm of the State, from the scene shortly thereafter. This evidence was sufficient to establish chain of custody under state law. Furthermore, Petitioner has not established a reasonable probability that if defense counsel had challenged the chain of custody of the weapons in summation, the result of the proceeding would likely have been different. While it was theoretically possible that someone could have substituted the guns before they were photographed and collected by the arriving officers, Petitioner has not provided any basis that

31

defense counsel could have convinced the jurors this likely occurred.  Therefore, the state court reasonably applied the *Strickland* test in finding counsel was not ineffective for failing to object to admission of the guns at trial or to challenge the chain of custody in closing argument at trial. Therefore, the Court will deny Ground 6 of the petition.

**Ground 7:  "Defense counsel failed to properly present the issue of the failure of the state to establish that Defendant was part of a conspiracy for distribution and manufacturing of drugs or to commit armed robbery."**  (ECF No. 1-1 at 40).

In support of this claim, Petitioner relies on his PCR brief and PCR appellate brief.  (*Id.*) In his PCR brief, Petitioner argued that the State lacked any evidence of affirmative conduct by Petitioner to conspire with Rodriguez.  (ECF No. 4-7 at 76).  There was no evidence of phone calls between the two; furthermore, they did not speak the same language.  (*Id.*)  Defense counsel failed to move for a directed verdict after the only evidence of conspiracy presented by the State was Petitioner's presence and arrest at the scene.  (ECF No. 4-7 at 77).  In his PCR appellate brief, Petitioner argued that his claim was not procedurally barred.  (*Id.* at 29-32).

Respondents note that Petitioner raised the underlying issue of insufficient evidence of conspiracy in his direct appeal, and in Ground 2 of the habeas petition.  (ECF No. 4 at 25).  Thus, Respondents rely on their response to Ground 2 in opposition to Petitioner's related ineffective assistance of counsel claim.  (*Id.*)

The highest reasoned state court determination is the Appellate Division on appeal of the PCR court's decision.  The Appellate Division rejected the claim, reasoning "[w]e decided that the trial court properly denied defendant's motion for judgment of acquittal because there was ample evidence whereby a reasonable jury could find defendant guilty of conspiracy to distribute heroin." (ECF No. 4-9 at 5-6).

In Ground 3 above, this Court found that the Appellate Division's determination that there was sufficient evidence upon which a reasonable jury could find defendant guilty of conspiracy to distribute heroin was not contrary to nor an unreasonable application of clearly established Federal law. Because the evidence was sufficient for a reasonable jury to find defendant guilty, counsel's performance was not deficient for failing to move for a directed verdict.

The second part of Petitioner's ineffective assistance of counsel claim is based on counsel's failure to move for a directed verdict on conspiracy to commit robbery. The Appellate Division summarily affirmed the PCR court's rejection of this claim. (ECF No. 4-9 at 8). The PCR court rejected this claim because "[d]efense counsel did, in fact, argue that the State failed to present evidence supporting the conspiracy charges and, as the Appellate Division found, the State produced ample evidence to support the charges." (ECF No. 4-7 at 103).

Petitioner, not defense counsel, raised the claim regarding the conspiracy to commit robbery in his *pro se* brief on direct appeal. (ECF No. 4-3 at 3, 15-18).[3] The Appellate Division summarily rejected the claim as lacking merit. (ECF No. 4-5 at 20). Therefore, the question on habeas review is "''what arguments or theories … could have supported[] the state court's decision; and … whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 102.

The same theory defense counsel raised in support of the sufficiency of evidence on the conspiracy to distribute heroin charge could also have supported the Appellate Division's decision on conspiracy to commit robbery. As discussed above, the agreement itself is the conspiracy, and the conspiracy may be proven by circumstantial evidence. Here, there was sufficient evidence. Petitioner arrived at the Hampton Inn in the same car with Rodriguez to provide the sample of

---

[3] Defense counsel challenged only the sufficiency of evidence on the charge of conspiracy to distribute two kilos of heroin. (ECF No. 4-5 at 16-17).

heroin to Detective Perez.  Once Detective Perez agreed to purchase the two kilos of heroin for

$100,000 and to meet at the Hampton Inn later that day for the sale, Petitioner returned to the

Hampton Inn parking lot, this time in a different car than Rodriguez and parked in a different area

of the parking lot.  After Rodriguez showed Detective Perez the fake heroin, Detective Perez went

to his car, ostensibly to get $100,000 to purchase the drugs.  Detective Perez testified that Petitioner

arrived just as he reached his car and pointed a gun at his head.  Another officer testified that

Petitioner tried to open Perez's car door after Perez fled.  Further, there was evidence that Petitioner

attempted, unsuccessfully, to jump in the car Rodriguez had arrived in, to flee the scene. This

evidence was sufficient to support the conviction for conspiracy to commit robbery.  Therefore,

defense counsel's "failure to properly present this issue," as Petitioner alleges in Ground 7, did not

prejudice the defense.  The state court's summary dismissal of this claim did not involve an

unreasonable application of *Strickland*.  This Court will deny Ground 7 of the petition.

**Ground 8:  "Trial counsel rendered ineffective assistance during the trial by failing to object to portions of the jury charge based on lack of evidence produced by the State."**  (ECF No. 1-1 at 40).

In support of this claim, Petitioner relies on the arguments in his PCR brief and PCR

appellate brief.  (*Id.*)  In his PCR brief, Petitioner submitted that his counsel was ineffective for

failing to object to the jury charge on robbery because the State failed to establish the required

elements of the offense.  (ECF No. 4-7 at 78).  Additionally, counsel failed to object to the jury

instruction because it did not contain a definition of attempted theft.  (*Id.* at 80).  Petitioner

concludes that counsel's failure to object satisfies both prongs of the *Strickland* test.  (*Id.*)  In his

PCR appellate brief, Petitioner argued that his ineffective assistance of counsel claim was not

procedurally barred.  (*Id.* at 30-32).  Respondents oppose relief, citing to their response to

Ground 2 of the petition.  (ECF No. 4 at 24-25).

The Appellate Division affirmed the PCR court but did not specifically discuss this claim. (ECF No. 4-9 at 6-8).  Therefore, the highest reasoned state court decision for habeas review is that of the PCR court.  The PCR court noted that the Appellate Division, on direct appeal, rejected Petitioner's challenge to the jury instruction on robbery.  (ECF No. 4-7 at 101).  The Appellate Division held that Petitioner's claim was insupportable because the argument was appropriately raised on a motion for judgment of acquittal, and the motion was denied.  (*Id.* at 104).

For the reasons discussed above in denying Ground 2 of the petition, the jury instruction was proper because attempt was defined, not in the robbery charge, but in the attempted murder charge.  As the Appellate Division noted in rejecting Petitioner's challenge to the jury instruction on direct appeal, there is no error if attempt was defined elsewhere in the charge.  *See*, *e.g.*, *State v. Smith*, 731 A.2d  (N.J. Super. Ct. App. Div.) *certif. denied*, 162 N.J. 489 (1999).  Furthermore, as this Court found in Ground 5(b) above, there was sufficient evidence for the trial court to instruct the jury on first-degree robbery.  For these reasons, trial counsel's failure to object to the jury instruction on robbery does not constitute deficient performance under the Sixth Amendment.  This Court will deny Ground 8 of the petition.

**Ground 9:  "Trial counsel rendered ineffective assistance by failing to make proper objections during the trial."** (ECF No. 1-1 at 41).

Petitioner raised this multipart claim in Point V of his PCR brief, which he relies on here. (ECF No. 4-7 at 81).  In discovery, Petitioner was provided with only one police report, the report that was written by Detective Perez.  (*Id.*)  In this report, Detective Perez referred to the existence of supplementary reports, but counsel did not follow up to obtain those reports during discovery. (*Id.*)  Petitioner contends that differences in the reports could have been used to challenge the State's credibility.  (*Id.*)  Further, Detective Brian Kelly and Detective Thomas Dombrowski were permitted to testify two years after Petitioner's arrest, although they did not make any

contemporaneous notes or write any reports. (*Id.* at 82). Finally, Petitioner asserts that his counsel should have objected to Detective Valdivia's testimony. (*Id.*) Detective Valdivia used Detective Perez's notes to refresh his recollection because Detective Valdivia did not take any notes himself. (*Id.*) Petitioner contends this failure by counsel was not a strategic decision. (*Id.*)

Respondents oppose relief because the PCR court found these arguments were nothing more than bald allegations. (ECF No. 4 at 25-26). Additionally, there is no rule that required the State to provide written statements from the officers before they were permitted to testify. (*Id.* at 26).

The highest reasoned state court determination of this claim for habeas review is that of the Appellate Division on appeal of the PCR court's decision, where the Appellate Division held:

> Defendant contends trial counsel failed to properly object to hearsay testimony by several police officers and failed to obtain supplemental police reports regarding the handguns and defendant's purported actions. The judge determined the contentions were nothing more than bald allegations premised on questions concerning trial strategy. Defendant provided no proof "that ...supplemental reports may have contained discrepancies or that additional or different cross-examination of the officers may have been fruitful." The judge also found there was no requirement that the State "provide written summaries of the officers' anticipated testimony prior to trial."

The PCR court's determination that bald allegations of ineffective assistance of counsel fail to state an ineffective assistance of counsel claim is not contrary to or an unreasonable application of *Strickland*. *See*, *e.g.*, *United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008) (wholly speculative theory on what counsel's investigation might have found is insufficient to establish prejudice under *Strickland*). Even if counsel's performance was deficient, the burden is on the petitioner to establish that the alleged error resulted in prejudice. *Strickland, 466 U.S* at 696 (stating that "a court making the prejudice inquiry must ask if the defendant has met the burden of

showing that the decision reached would reasonably likely have been different absent the errors.) It is not enough to speculate that there may have been a discrepancy in police reports that were not produced in discovery. Furthermore, it did not violate New Jersey's rules of evidence for the detectives to testify in the absence of producing any contemporaneous notes or written reports. Although a witness may use any document to refresh his or her recollection at trial, *State v. Carter*, 449 A.2d 1280, 1299 (N.J. 1982), Detective Valdivia refreshed his recollection by reading Detective Perez's report before trial, not during his testimony. (ECF No. 4-19 at 107-8). Thus, there was no basis for defense counsel to object to Detective Valdivia's testimony. Moreover, defense counsel used Detective Valdivia's failure to take contemporaneous notes or write his own report to undermine the credibility of his testimony. (ECF No. 4-19 at 104-11). Thus, Petitioner has failed to meet his burden to establish this ineffective assistance of counsel claim. This Court will deny Ground 9 of the habeas petition.

**Ground 10: "Appellate Counsel rendered ineffective assistance of counsel by failing to raise vital issues which had been presented in the trial court."** (ECF No. 1-1 at 41).

Petitioner relies on the arguments he raised in this multipart claim in his PCR brief, and his PCR appellate brief. (ECF No. 1-1 at 41). In his PCR brief, Petitioner claimed that his appellate counsel was ineffective by failing to raise the issue of prosecutorial misconduct before the grand jury, and by failing to challenge the admissibility of the weapons found at the scene. (ECF No. 4-7 at 85). In his PCR appellate brief, Petitioner maintained that his appellate counsel, by not raising these issues on his behalf, forced Petitioner to raise these issues in a *pro se* brief, and the appellate court concluded that his arguments lacked merit. (ECF No. 4-7 at 28).

Respondents oppose relief. As to the failure to challenge the admissibility of the weapons found at the scene, Respondents note the PCR court rejected this claim because there was sufficient evidence placing the weapons at the scene. (ECF No. 4 at 27). Therefore, appellate counsel's

failure to raise the claim was not ineffective because counsel is not required to raise meritless claims, and Petitioner cannot establish prejudice from the failure to raise a meritless claim.  (*Id.*)

The PCR court and the Appellate Division on PCR appeal addressed these ineffective assistance of appellate counsel claims.  The Appellate Division rejected the claim related to prosecutorial misconduct before the grand jury, reasoning that it had addressed this claim on direct appeal, and held that it lacked sufficient merit to warrant discussion.  (ECF No. 4-9 at 6).  This was the highest reasoned state court determination of the issue.

The Appellate Division's rejection of this ineffective assistance of appellate counsel claim is not contrary to nor an unreasonable application of the *Strickland* test.  Indeed, Petitioner cannot establish *Strickland* prejudice where the Appellate Division considered this claim on direct appeal and found the claim without merit.  "The United States Supreme Court has held that a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue that defendant requests on appeal."  *State v. Gaither*, 935 A.2d 782, 786 (N.J. Super. Ct. App. Div. 2007) (citing *Jones v. Barnes*, 463 U.S. 745, 753-54 (1983)).

The highest reasoned State court determination of the ineffective assistance of appellate counsel claim based on the failure to challenge the admissibility of the weapons evidence is by the PCR court.  The PCR court first determined that *trial counsel* was not ineffective for failing to object to the admissibility of the weapons evidence, as discussed in Ground 6 above.  The PCR court also noted the same *Strickland* standard applies to ineffective assistance of appellate counsel claims.  (ECF No. 4-7 at 106).  The PCR court's determination, affirmed without discussion by the Appellate Division, is not contrary to nor an unreasonable application of the *Strickland* test.  Petitioner cannot establish prejudice based on counsel's failure to raise a meritless claim.  As

discussed in Ground 6 above, there was sufficient evidence to support admissibility of the weapons

found at the scene. Therefore, this Court will deny Ground 10 of the habeas petition.

**Ground 11:  "Trial and Appellate Counsel rendered ineffective assistance by failing to raise crucial issues on Defendant's behalf, so that Defendant was compelled to file *pro se* briefs."** (ECF No. 1-1 at 41).

Petitioner raised this claim as Point VII in his PCR Brief, which he relies on here.  (ECF

No. 4-7 at 88).  He asserted that he had to file his own pretrial brief seeking dismissal of the

Indictment.  He also filed a *pro se* brief for dismissal after the verdict. At the appellate level, he

had to raise the issues of prosecutorial misconduct before the grand jury, and insufficient evidence

on conspiracy to commit robbery in a *pro se* brief.  Petitioner contends appellate counsel was

ineffective for failing to raise these issues on his behalf.  Respondents oppose relief because the

Appellate Division agreed with the PCR court that the claim could not be raised in PCR

proceedings because the arguments were presented to the Appellate Division and were reviewed

and rejected. (ECF No. 4 at 27).

The highest state court determination of this claim was by the Appellate Division on PCR

Appeal, which held as follows.

> Defendant also contends that both trial and appellate counsel failed to raise crucial issues on his behalf, causing him to file two pro se motions, and pro se supplemental trial and appellate briefs. Defendant's motions sought to dismiss the indictment based upon the prosecutorial misconduct and insufficient evidence, and to obtain an acquittal notwithstanding the verdict on the robbery and drug charges. The motions were denied.
>
> Defendant's pro se brief point headings argued: (1) "[p]rosecutorial misconduct during grand jury proceedings"; (2) "[t]he State failed to present evidence from which the jury could draw inference to conclude beyond a reasonable doubt that defendant conspired to commit robbery and possessed CDS [with] intent to distribute"(second alteration in original); (3) "the trial court failed to instruct the jury on an essential element of [first-degree robbery]"; (4) "[t]he State failed to present sufficient evidence from which the

> jury could conclude first[-]degree [robbery] beyond a reasonable
> doubt"; and ( 5) "[t]here was insufficient evidence of the existence
> [of] heroin ... to sustain a conviction" on any of the CDS charges.
> Greene, slip op. at 8-9. We decided that the trial court properly
> denied defendant's motion for judgment of acquittal because "there
> was ample evidence whereby a reasonable jury could find defendant
> guilty of conspiracy to distribute heroin." Id. at 17. As for
> defendant's other appellate pro se arguments, this court applied Rule
> 2:11-3(e)(2), holding they "lack[ed] sufficient merit to warrant
> discussion in a written opinion." Id., at 20.
>
> Judge Vinci found defendant's contentions were not viable for PCR
> merely because he alleged that counsel was deficient and that they
> could not have been raised before the trial and appellate courts. The
> judge held "defendant cannot establish that [trial and appellate
> counsels'] ... failure to [raise issues] changed the result of, or
> undermined confidence in, the outcome of the proceedings because
> the arguments were, in fact, presented to those courts."

(ECF No. 4-9 at 5-6).

The state courts considered and rejected the claims Petitioner raised in his *pro se* briefs.

Without identifying any prejudicial errors in the *pro se* briefs that counsel could have corrected,

Petitioner's contention that a counseled brief was more likely to succeed on these claims is too

speculative to establish *Strickland* prejudice..   Therefore, this Court will deny Ground 11 of the

petition.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas

proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude that the issues presented here are adequate

to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has

failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further.  This Court therefore denies Petitioner a certificate of appealability.

## V.  CONCLUSION

For the reasons stated above, this Court will deny Petitioner's petition for a writ of habeas corpus under § 2254 (ECF No. 1), and deny a certificate of appealability.


An appropriate order follows.


Date: <u>March 8, 2023</u>

_____
Hon. Susan D. Wigenton
United States District Judge